Bret T. Allred; WSB 6-3835
Basin Law Group, LLC
117 N Bent Street
Powell, WY 82435
Telephone: 307-271-6008
Fax: 877-295-3104
Attorney for Co-Defendants

UNITED STATES DISTRICT COURT
for the
District of Wyoming

| | | |
|---|---|---|
| KELLY JAMES | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | Case No. 15-CV-141-F |
| ROCKY MOUNTAIN RECOVERY | ) | |
| SYSTEMS, INC. et al. | ) | |
| Defendants | ) | |

## MICHAEL B WILKERSON'S MOTION FOR SUMMARY DISMISSAL

COMES NOW, Michael B Wilkerson (hereinafter referred to as the "**Defendant**" or "**Mr. Wilkerson**") by and through counsel and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves the Court for a summary dismissal of all claims filed against Mr. Wilkerson only.  This motion does not alter any of the Plaintiff's claims against the other identified and unidentified co-defendants in the pleadings.   The facts set forth in the "The Affidavit of Michael B. Wilkerson," attached hereto and incorporated herein by reference for all purposes, indicates there are no genuine issues of material fact and Defendant has a right, as a matter of law, to have all claims filed against it dismissed with prejudice.

### ISSUES

1. Is Mr. Wilkerson a debt collector as defined by the FDCPA?

2. Did Mr. Wilkerson violate 15 U.S.C. § 1692c(c) by communicating with the Plaintiff after Rocky Mountain Recovery Systems, Inc., received written notice that the debts were disputed?

3. Did Wilkerson & Bremer P.C.'s letter to the Plaintiff dated June 14, 2015 constitute one of the enumerated exceptions to 15 U.S.C. §1692c(c)?

4. Did Mr. Wilkerson violate 15 U.S.C. §§ 1692d, 1692e, and 1692f?

5. Can the Plaintiff seek to redress her grievances against Mr. Wilkerson for perceived violations of the Rules and Regulations promulgated by the Wyoming Collection Agency Board by filing a complaint with the judiciary?

FACTS

The following facts are set out either by Mr. Wilkerson's affidavit or the Defendant's complaint which are stipulated to by Mr. Wilkerson for the limited purpose of framing the issues for this motion for summary judgment and he expressly reserves the right to contest all averments contained in the complaint in future motions or at trial.  All other averments contained in the complaint not expressly identified below are denied.

1. Two debts naming the Plaintiff as obligor were assigned to Rocky Mountain Recovery Systems, Inc. (hereinafter referred to as "**RMR**") by Cheyenne Urological, P.C. and numbered for identification purposes as account numbers 151454 (hereinafter referred to as "**Account 1**") and 162090 (hereinafter referred to as "**Account 2**"). (*See complaint paragraphs 2 and 8.*)

2. RMR is a debt collector as that term is defined by the federal Fair Debt Collection Practices Act (hereinafter referred to as the "**FDCPA**"). (*See complaint paragraph 22.*)

3. The Plaintiff is a "Consumer" as that term defined by FDCPA. (*See complaint paragraph 25.*)

4. The obligation owed by the Plaintiff for Account 1and Account 2 are each a "Debt" as that term is defined by the FDCPA. (*See complaint paragraph 26.*)

RMR Account 1 Collections

5. On or about September 2, 2014, RMR mailed a written initial communication to Plaintiff alleging money owed for Account 1. (*See complaint paragraph 2*.)

6. On September 29, 2014 RMR received in the mail a written communication from the Plaintiff stating that the Plaintiff refused to pay Account 1 and requested validation of the debt. (*See complaint paragraph 3 and Exhibit 1 attached to the complaint.*)

7. On September 29, 2014 RMR mailed a letter to the Plaintiff validating the debt owed for Account 1. (*See complaint paragraph 4 and Exhibit 2 attached to the compl*aint.)

8. On October 7, 2014 RMR placed two telephone calls to the Plaintiff. (*See complaint paragraphs 5 and 6.*)

9. On October 23, 2014 RMR placed a telephone call to the Plaintiff. (*See complaint paragraph 7.*)

RMR Account 2 Collections

10. On or about April 7, 2015, RMR mailed a written initial communication to Plaintiff alleging money owed for Account 2. (*See complaint paragraph 8.*)

11. On or about April 20, 2015, RMR mailed a written initial communication to Plaintiff alleging money owed for Account 2. (*See complaint paragraph 9.*)

12. On April 29, 2015 RMR received in the mail a written communication from the Plaintiff stating that the Plaintiff refused to pay Account 2 and requested validation of the debt. (*See complaint paragraph 10 and Exhibit 3 attached to the complaint.*)

13. On April 29, 2015 RMR mailed a letter to the Plaintiff validating the debt owed for Account 2. (*See complaint paragraph 11 and Exhibit 4 attached to the complaint.*)

14. On May 4, 2015 RMR placed a telephone call to the Plaintiff. (*See complaint paragraph 12.*)

15. On May 14, 2015 RMR placed a telephone call to the Plaintiff. (*See complaint paragraph 13.*)

16. On June 12, 2015 RMR mailed a written communication to the Plaintiff attempting to collect Account 2. (*See complaint paragraph 14 and Exhibit 5 attached to the complaint*.)

Wilkerson & Bremer, P.C. and Mr. Wilkerson's Conduct

17. On June 14, 2015 Wilkerson & Bremer P.C. mailed a written initial communication to the Plaintiff (hereinafter referred to as "**Disclosure Letter**") conveying the disclosures required by 15 U.S.C. 1692g in anticipation of "communication" (as that word is defined by the 15 U.S.C. 1692a) through service of legal documents other than pleadings. A copy of this letter is attached to the affidavit of Michael B. Wilkerson as Exhibit 6 and incorporated herein by reference for all purposes. *See Exhibit I, paragraph 1 of the Affidavit of Michael B Wilkerson.*

18. Mr. Wilkerson and WB have not received a written communication from the Plaintiff directing Mr. Wilkerson or WB to cease communications regarding either Account 1 or Account 2 or stating that Plaintiff refused to pay Mr. Wilkerson or WB said accounts. *See Exhibit I, paragraph 2 of the Affidavit of Michael B Wilkerson.*

19. It is WB's policy and procedures that immediately upon a request for litigation from RMR a letter in the style of the Disclosure Letter is mailed to a potential defendant to avoid violations of 15 U.S.C. 1692g(a) which requires certain disclosures within five days of the initial communication. *See Exhibit I, paragraph 3 of the Affidavit of Michael B Wilkerson.*

20. WB is an inactive professional corporation incorporated in the year 1989 under the laws of the state of Wyoming and administratively dissolved on April 10, 2016. *See Exhibit I, paragraph 4 of the Affidavit of Michael B Wilkerson.*

21. WB's primary office from which legal services were performed is located at 210 N Bent Street, Powell, Wyoming. *See Exhibit I, paragraph 5 of the Affidavit of Michael B Wilkerson.*

22. WB did not share office space with RMR and the two were physically located in separate office buildings across town. *See Exhibit I, paragraph 6 of the Affidavit of Michael B Wilkerson.*

23. WB employed people separate from RMR to manage and assist in the drafting and mailing of legal documents. *See Exhibit I, paragraph 7 of the Affidavit of Michael B Wilkerson.*

24. Mr. Wilkerson and WB performed legal services for RMR on a case by case basis by preparing litigation documents and entering an appearance in the litigation. *See Exhibit I, paragraph 8 of the Affidavit of Michael B Wilkerson.*

25. Mr. Wilkerson and WB counseled RMR on any legal concerns discovered while litigating for RMR. *See Exhibit I, paragraph 9 of the Affidavit of Michael B Wilkerson.*

26. Neither Mr. Wilkerson nor WB oversaw or mandated RMR's procedures and implementations of any legal advice proffered. *See Exhibit I, paragraph 10 of the Affidavit of Michael B Wilkerson.*

27. Mr. Wilkerson and/or WB did not direct, oversee, authorize, allow, merge, and/or mail the documents attached to the affidavit of Mr. Wilkerson as follows:

    a. Exhibit 1    Letter from Plaintiff to RMR dated September 25, 2014;
    b. Exhibit 2    Letter from RMR to Plaintiff dated September 29, 2014;
    c. Exhibit 3    Letter from Plaintiff to RMR dated April 27, 2015;
    d. Exhibit 4    Letter from RMR to Plaintiff dated April 29, 2015; and,
    e. Exhibit 5    Letter from RMR to Plaintiff dated June 12, 2015.

    *See Exhibit I, paragraph 11 of the Affidavit of Michael B Wilkerson.*

28. Neither Mr. Wilkerson nor WB directed, oversaw, authorized, allowed, composed, prepared, performed, and/or conducted any telecommunications with the Plaintiff including the alleged

communications on October 7, 2014, October 23, 2014, May 4, 2015, and May 14, 2015. *See Exhibit I, paragraph 12 of the Affidavit of Michael B Wilkerson.*

29. Prior to RMR's request for litigation on or about June 14, 2015 WB did not known about any telecommunications with the Plaintiff including the alleged communications on October 7, 2014, October 23, 2014, May 4, 2015, and May 14, 2015. *See Exhibit I, paragraph 13 of the Affidavit of Michael B Wilkerson.*

30. Prior to receiving Plaintiff's pleadings in this matter, Mr. Wilkerson did not known about any telecommunications with the Plaintiff including the alleged communications on October 7, 2014, October 23, 2014, May 4, 2015, and May 14, 2015. *See Exhibit I, paragraph 14 of the Affidavit of Michael B Wilkerson.*

31. Aside from the written pleadings filed in this matter and the written letter dated June 14, 2015 (Exhibit 6 to Mr. Wilkerson's affidavit) WB has had no direct written or oral communications with the Plaintiff. *See Exhibit I, paragraph 15 of the Affidavit of Michael B Wilkerson.*

32. Aside from the written pleadings filed in this matter Mr. Wilkerson has had no direct written or oral communications with the Plaintiff. *See Exhibit I, paragraph 16 of the Affidavit of Michael B Wilkerson.*

33. RMR did not give WB authority to negotiate settlement or payment plans with pro se respondents and all telecommunications directed to WB by pro se respondents were redirected to RMR. *See Exhibit I, paragraph 17 of the Affidavit of Michael B Wilkerson.*

34. Mr. Wilkerson is not an employee of RMR other than his position as an office in the company. *See Exhibit I, paragraph 18 of the Affidavit of Michael B Wilkerson.*

35. Mr. Wilkerson does not receive wages from RMR for his duties as an officer. *See Exhibit I, paragraph 19 of the Affidavit of Michael B Wilkerson.*

36. Mr. Wilkerson's duties as an officer for RMR do not involve managing or overseeing the day-to-day operations of RMR or involve collecting debts from consumers. *See Exhibit I, paragraph 20 of the Affidavit of Michael B Wilkerson.*

37. Mr. Wilkerson is currently the managing partner of Wilkerson & Bremer Law Group, LLC. *See Exhibit I, paragraph 21 of the Affidavit of Michael B Wilkerson.*

## AUTHORITY

1. 15 U.S.C. § 1692 et seq. (also known as the Fair Debt Collection Practices Act or FDCPA);
2. *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, (2002);
3. *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997)
4. *James v. Wadas,* 724 F.3d 1312, 1315-1316 (10th Cir. 2013);
5. *In re Wise,* 346 F.3d 1239, 1241 (10th Cir.2003);
6. *Center for Legal Advocacy v. Hammons,* 323 F.3d 1262, 1267 (10th Cir.2003)
7. *Carvana v. MFG Financial, Inc.,* 061708 UTDC, 2 07-CV-00128 (D. UT. 2008).
8. *Watters v. Midland Credit Management,* 2:11-CV-00177-BSJ U.S. (D. UT. 2012)
9. *Udell v Kansas Counselors, Inc*, 313 F.Supp.2d 1135 (D.Kan. 2004).
10. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389 (6th Cir. 1998).
11. *Wyoming Statutes § 33-11-101 through 33-11-116*
12. *Wyoming Collection Agency Board's Rules and Regulations*

## ANALYSIS

I. <u>Is Mr. Wilkerson a debt collector under the FDCPA because of his partial ownership of, or employment by a debt collector as an officer?</u>

The FDCPA was enacted to prevent abusive debt collection practices by third-party consumer debt collectors. See 15 U.S.C. § 1692(e). To further these goals, the FDCPA prohibits

debt collectors from engaging in certain conduct deemed abusive. "Violation of these standards subjects debt collectors to civil liability…." Accordingly, a defendant can be held liable for violating the FDCPA only if she is a debt collector within the meaning of the FDCPA. See Wadas at 1316.

> A debt collector is:
>
> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*See 15 U.S.C. §1692a(6).* The Code also carves out a few express exceptions to the definition of debt collector none of which are applicable to these facts. The United Stated District Court, District of Utah has found that officers, directors and shareholders of a corporation can incur liability under the FDCPA without piercing the corporate veil, but their status alone does not qualify them as a debt collector. *See Carvana at \*3*. "To be a debt collector, a person or organization must (1) use an instrumentality of interstate commerce or the mails, (2) for the principal or regular purpose of attempting to collect debts, (3) asserted to be owed to another." *See Watters at \*8*.

Both the Watters and Wadas decisions dealt with whether an attorney at law was a debt collector. The Wadas case focuses on the "regularly" attempts to collect debts aspect of the definition whereas the Watters court provided a complete interpretation of the code section. The Watters decision is consistent with the Tenth Circuit Court of Appeals decision in Wadas which was decided approximately a year later.

First, does Mr. Wilkerson use an "instrumentality of interstate commerce or the mails" to collect a debt? His affidavit shows that he does work for RMR but the collection of debts is not one of his duties. Mr. Wilkerson is employed by WB and manages the firm. The facts show that

WB does provide litigation services for RMR in aid of its collection efforts and the service of court filings are communications to collect a debt that pass through the mail, but there is no evidence that Mr. Wilkerson uses interstate commerce or the mail personally to collect debts.

Second, is Mr. Wilkerson's principal or regular purpose to attempt to collect debts? This analysis is divided into two parts. Either his "principal purpose" is the collection of debts or he "regularly" collects or attempts to collect debts. The Wadas court stated that:

> Congress intended the "principal purpose" prong to differ from the "regularly" prong of its definition of "debt collector." … [A] person may regularly render debt collection services, even if these services are not a principal purpose of the business. Indeed, if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of the total business activity; the person still renders them 'regularly.

*See Wadas at 1317.*

Mr. Wilkerson's testimony shows that he is an office for RMR but does not engage in the debt collection side of the business. Mr. Wilkerson manages WB and WB aids RMR in litigation to collect debts. The documents WB serves on consumer in those cases in a debt collection activity. However, there are no facts before this Court indicating the amount of clients are serviced by WB or Mr. Wilkerson and whether those clients are collecting third party debts. Also, the intervals in which RMR contacts WB for services in collecting debts is not documented and so the Court cannot find that there is sufficient volume of debt collection business given to WB or Mr. Wilkerson to meet the "regularly" collects or attempts to collect a debt prong of the test.

Third, does Mr. Wilkerson attempt to collect a debt asserted to be owed to another? Once again the facts indicate that WB has represented RMR in the litigation efforts designed to collect a debt and Mr. Wilkerson is manages WB. There is sufficient evidence before the court to show

that Mr. Wilkerson does meet the third prong of the test.  In order to qualify as a debt collector under the FDCPA one must pass all three prongs of the test.  Mr. Wilkerson had not passed the second prong and so does not qualify as a debt collector.

> II.   <u>Did Mr. Wilkerson violate 15 U.S.C. § 1692c(c) by communicating with the Plaintiff after Rocky Mountain Recovery Systems, Inc., received written notice that the debts were disputed?</u>

This section sets aside the issue of whether or not Mr. Wilkerson is a debt collector and focuses instead on whether or not a dispute letter to one debt collector requires a subsequent debt collector to cease communication.

> If <u>a consumer notifies</u> a debt collector <u>in writing</u> that the consumer <u>refuses to pay</u> a debt or that the consumer wishes the debt collector to <u>cease further communication</u> with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt....

Emphasis added. See 15 U.S.C. 1692c(c).  It is not the knowledge of the consumer's intent that activates the statute's prohibition on communication but whether the consumer has met all of the statute's conditions.  The interpretation begins with the language of the statute. *See Sigmon Coal Co at 450*.  "[T]he court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *See Hammons at 1267 (quotation omitted)*.  "If the statutory language is not ambiguous, and 'the statutory scheme is coherent and consistent,' further inquiry is unneeded." See *In re Wise at 1241*.  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." See *Robinson at 341*.

A consumer who calls a debt collector and orders no further communication will not prevent the debt collector from exercising its right to further communications despite the debt

collector's direct knowledge of the consumer's position because the statute's writing requirement has not been met.  So, knowledge of the consumers position whether imputed to a subsequent debt collector or not is immaterial to the analysis.  The Court must look at whether the consumer met all of the statutes conditions in order to engage its prohibition.

The statute requires the fulfilment of six conditions.  First, the prohibition requires the "consumer notifies a debt collector."  If the notice comes from any other source other than the consumer it fails to enact the prohibition.  The facts of this case show that the Plaintiff gave notice to RMR but not WB or Mr. Wilkerson.  Even if the notice were conveyed to WB or Mr. Wilkerson indirectly through a third party it fails the first condition of the statute and the prohibition is not in affect.

Second, the notice must be given to "a debt collector." The statute as a whole is written to a singular debt collector.  It refers to "a debt collector" and "the debt collector."  This indicates that the notice must identify which debt collector it is addressing.  The only notices in evidence in this matter are two letters refusing to pay debts addressed and mailed to RMR.  Nowhere in the letter is WB or Mr. Wilkerson mentioned and so the second condition of the statute is not met and the prohibition is not in affect.

The third condition required by the statute is that the debt collector must be notified "in writing."  The Plaintiff's notices were admittedly in the form of a written letter and so this condition was met.

Fourth, the notice must declare one of two things; that the "the consumer refuses to pay," or "the consumer wishes the debt collector to cease further communication."  Plaintiff's notices directly quoted the statute in this requirement thus meeting the condition.

Fifth, the statute places a limitation on the prohibition but that limitation also implies a condition.  A debt collector is only prohibited to make contact "with respect to such debt."  This implies that the notice identified the debt.  Courts have found that general statements such as "all

debts" are sufficient to allow the debt collector to identify the debt. See *Udell* at 140. Plaintiff's notice identifies the debts by the account numbers assigned to them by RMR thus meeting this condition.

The sixth and final condition that must be met is implied by the statutes language restricting "further communication" which implies that the debt collector has already communicated with the consumer. The U.S. District Court in and for Kansas found:

> The statute refers to ceasing "further communications with the consumer". This indicates that the debt collector can only be directed to cease communications with respect to a debt about which the debt collector has already communicated with the consumer."

See *Udell at* 1140, (where the court found that a notice to cease further communication did not apply to future debts). Neither WB nor Mr. Wilkerson had communicated with the Plaintiff prior to Plaintiff's notices.

III. Did WB's sole communication with the Plaintiff, the letter dated June 14, 2015, constitute one of the enumerated exceptions to 15 U.S.C. §1692c(c)?

The only communication with a possibility of Mr. Wilkerson's involvement would be the June 14, 2015 letter from WB (hereinafter referred to as the "Disclosure Letter. If a consumer meets all of the conditions to enact 15 U.S.C. 1692c(c)'s prohibition on communication, 15 U.S.C. 1692c(c)(2) carves out one exception to the rule for certain types of communications designed to "notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor."

In addition to the statutory language required to be given to a consumer with or shortly after an initial communication (See 15 U.S.C. 1692g), the Disclosure Letter identifies the subject debts and that WB has been asked to provide "additional services to recover the balance due.

Not only is it important for the court to consider the contents of the Disclosure Letter, it is key to note what the letter does not mention. It does not demand payment. It is not a decree that action will be taken. It does not demand anything of the Plaintiff. All of these would be tell-tail signs that the letter is a collections letter which is prohibited by 15 U.S.C. 1692c(c) and not the permitted notification letter allowed by 15 U.S.C. 1692c(c)(2).

To expand 15 U.S.C. 1692c(c)'s prohibitions to letters from attorneys providing information to a consumer would not only thwart policy interests seeking judicial economy but would also be detriment to the consumer.

> To hold that a debt collector cannot offer payment options as part of an effort to resolve an outstanding debt, possibly without litigation, would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt - something that is clearly at odds with the language and purpose of the FDCPA.... Allowing debt collectors to send such a letter is not only consistent with the Act but also may result in resolution of the debt without resorting to litigation, saving all parties involved the needless cost and delay of litigation…. And it is certainly less coercive and more protective of the interests of the debtor.

See *Lewis at* 399.

Furthermore, sending the Disclosure Letter containing the disclosures required by 15 U.S.C. 1692g(a) is a necessary step for any firm representing a collection agency in litigation. Undoubtedly the firm will serve documents on the consumer which constitutes a communication. 15 U.S.C. 1692g was amended by congress to exclude "court pleadings" from the definition of "initial communications" however, not all court filings are pleadings but consist of disclosures, proposed orders, motions, and notices. Rules of litigation in all courts are increasing in complexity and a majority of consumers appearing pro se to defend their interests. Sending 15

U.S.C. 1692g(a) disclosures with non-pleadings or during litigation would only stand to confuse the consumer.

IV.     Did Mr. Wilkerson violate 15 U.S.C. §§ 1692d, 1692e, and 1692f?

The FDCPA's protections extends to more than just consumers and, to some extent, can be enforced by non-consumers. However, the FDCPA can only be enforced against a debt collector. See 15 U.S.C. §§1692c(c), 1692d, 1692e, and 1692f (which all reference enforcement against debt collectors). Because Mr. Wilkerson is not a debt collector under the FDCPA his actions cannot run afoul of its prohibitions.

Regardless of Mr. Wilkerson's status in relation to a debt collector, the evidence shows that he had no part in the debt collection actions taken against the Plaintiff. His affidavit states that he had no knowledge of Account 1 and Account 2 and took no part in making any of RMR's communications. The only communication plead that Mr. Wilkerson possibly could be attribute to him is the Disclosure Letter. The Plaintiff broadly asserted in the complaint that Mr. Wilkerson's mailing of the Disclosure Letter constituted "conduct the natural consequence of which is to harass, oppress, or abuse," was a "false, deceptive, or misleading representation or means" to collect Plaintiff's debts, was a "threat to take any action that cannot legally be taken or that is not intended to be taken" and a "use [of] unfair or unconscionable means to collect or attempt to collect any debt." See 15 U.S.C. §§ 1692d, 1692e, and 1692f. Because the Plaintiff failed to aver specific facts supporting these broad claims it is hard to properly research and traverse these allegations. Suffice it to say that the Disclosure Letter contained no false statements, was not disparage or oppressive, was not harassing, did not threaten to take any action.

V.  <u>Can the Plaintiff seek to redress her grievances against Mr. Wilkerson for perceived violations of the Rules and Regulations promulgated by the Wyoming Collection Agency Board by filing a complaint with the judiciary?</u>

Wyoming has set forth certain statutes governing collections of debts by third party collectors within the State of Wyoming. *See W.S. § 33-11-101 through 33-11-116.* (hereinafter referred to as the "**Act**").  The Act creates a Collection Agency Board and its chairman (hereinafter referred to collectively as the "**Board**") and bestows certain duties and authorities upon the Board.  W.S § 33-11-105 defines the powers and duties of the Board which are limited to the issuing and refraining from issuing licenses to collection agencies wishing to conduct business in Wyoming.  The Wyoming legislature also saw fit to delegate some of its power to legislative rules and regulations:

> The board shall make reasonable rules and regulations for the administration of this act, and for prescribing acceptable professional standards of conduct of <u>licensees.</u>

(Emphasis added). See W.S. § 33-11-106.  The Board's authority to create rules and regulations regarding standards of conduct can only be enforced against "licensees."  The Act defines a debt collector to mean:

> [A]ny person employed or engaged by a collection agency to perform the collection of debts owed or due or asserted to be owed or due to another, including any owner or shareholder of the collection agency business who engages in the collection of debts.

See W.S. § 33-11-101(a)(viii).  A "licensee," or one who is required to procure a license to collect third party debts in Wyoming, is identified in W.S. § 33-11-102:

> No person shall conduct a collection agency or act as a debt collector or solicitor within this state without first having obtained a license as provided in this act, <u>except</u> that a debt

>collector or solicitor <u>acting in the course of his employment for a collection agency</u> licensed in Wyoming <u>is not required to have an individual license.</u>

Emphasis added. Employees of licensed collection agencies are not required to be licensed and therefore fall outside the definition of a "licensee" and so are not subjugated to the Board's rules and regulations prescribing standards of conduct.

Section 6 of Chapter 4 of the Rules and Regulations promulgated by the Board (hereinafter referred to as the "**WYO FDCPA**") adopts the FDCPA by reference in its entirety(less any post 2006 amendments). It is under this section that the Plaintiff is seeking statutory damages from Mr. Wilkerson. All of Mr. Wilkerson's defenses to the Plaintiff's FDCPA claims stated above also apply to Plaintiff's WYO FDCPA claim. Additionally, the WYO FDCPA is an attempt by the Board to regulate conduct whose authority is limited to "licensees." Whenever incorporating other statues or code sections by reference there is bound to be incongruities between definitions and applicability. When the Boards rules and regulations are read as a whole it is clear that the Board only intended to use the FDCPA as a standard of conduct for "licensees." Mr. Wilkerson is not a "licensee" because she is an employee of RMR and is not engaged in collecting third party debts.

Also, there is no private right of action for violations of the WYO FDCPA. W.S. § 33-11-112 identifies the procedures for private parties to seek redress for violations of the Act or the Boards rules.

>"Any interested person <u>may file a verified written complaint</u> charging any collection agency <u>licensee</u> with a <u>violation of this act or the rules</u> adopted by the board, or with conduct that shows the <u>licensee</u> is unworthy to continue to operate a collection agency within this state. The <u>complaint shall be filed with the board</u> which shall investigate the complaint if necessary or refer the complaint to appropriate staff for investigation and <u>referral back to the board for proper disposition.</u>

*See W.S. § 33-11-112(a).* A private citizen cannot seek redress in the judicial systems for violations of the WYO FDCPA without first complying with the Wyoming Administrative Procedures Act and W.S. § 33-11-112.

**WHEREFORE**, Defendant prays as follows:

a. Mr. Wilkerson's motion for summary dismissal be granted;

b. All of Plaintiff's claims against Mr. Wilkerson be dismissed; and,

c. For such further relief as the Court may deem just and proper in the premises.

**DATED** this 15 April 2016.

_____
Bret T. Allred 6-3835
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing motion with all exhibits and attachments were served upon the Plaintiff by depositing the same in the US Mail, duly enveloped and with postage prepaid, this 15 day of April, 2016, addressed to: <u>Kelly James, 3422 Cribbon Avenue, Cheyenne, WY 82001.</u>

_____
Bret T. Allred